IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| 1-800-CONTACTS, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> MEMORIAL EYE, PA d/b/a SHIPMYCONTACTS.COM, SHIP-MY-CONTACTS.COM, and IWANTCONTACTS.COM, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS OR TRANSFER VENUE <br><br><br><br><br> Case No. 2:08-CV-983 TS |

This matter is before the Court on Defendant's Motion to Dismiss or Transfer Venue. The underlying case is a trademark infringement case, wherein Plaintiff alleges that Defendant infringed its "1-800-Contacts" trademark and related trademarks by buying sponsored ads on Google and other search engines using Plaintiff's trademarks. Defendant argues that the Court does not have personal jurisdiction over it, and that venue is improper. The primary basis for both of these arguments is that Defendant has insufficient contacts with the state of Utah, even though it concedes that it has made sales in Utah during at least the last year. For the reasons set forth below, Defendant's Motion will be denied.

1

I. BACKGROUND

The following facts are taken from the filings of the parties.[1] Plaintiff is a Delaware corporation with its principal place of business in Draper, Utah. Defendant is a Texas Professional Association with a principal place of business in Houston, Texas. Plaintiff and Defendant sell and distribute contact lenses and eye care products through multiple channels, including telephone, fax, the Internet, and by mail. Plaintiff operates a website at www.1800contacts.com and owns a number of registered trademarks related to the name "1-800-Contacts."

Defendant operates three websites: www.shipmycontacts.com, www.ship-my-contacts.com, and www.iwantcontacts.com. On Defendant's websites, an individual with access to the Internet may place a preliminary order for contacts and eye care products. Defendant then verifies the order and ships the product to the customer's address. If Defendant needs to verify a customer's prescription with an eye care professional, Defendant contacts that eye care professional directly. Defendant concedes that a small percentage of its sales last year were to customers in the state of Utah.

II. DISCUSSION

A.   PERSONAL JURISDICTION

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[2] "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction

---

[1] A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue or personal jurisdiction. By considering documents outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(2), the Court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment." *Flynn v. Ohio Building Restoration, Inc.*, 260 F.Supp.2d 156, 161 (D.D.C. 2003).

[2] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

does not offend the due process clause of the Fourteenth Amendment.'"[3]  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[4]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[5]  "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[6]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[7]

The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.  In this case, Plaintiff asserts the Court has both general and specific jurisdiction.

---

[3] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[4] *Systems Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).

[5] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[6] *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[7] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

1.   *General Jurisdiction*

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[8] "Establishing jurisdiction through the Internet, or more specifically through a website, has been analyzed by some courts under a framework of three general categories lying along a sliding scale."[9] On one end of the scale are defendants who clearly do business over the Internet, such as entering into contracts which require the knowing and repeated transmission of files over the Internet.[10] Jurisdiction is proper in those cases.[11] On the other end of the scale are passive web sites that do little more than make information available to those who are interested.[12] Exercising jurisdiction in these cases is inappropriate.[13] A middle category encompasses interactive web sites where a user can exchange information with the host computer.[14] In this category, whether jurisdiction is appropriate depends on the nature and level of interactivity.[15]

The Court finds that Defendant falls within the first category, as it clearly does business over the Internet. It generates sales through its interactive websites. Defendant argues that no sales are

---

[8] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[9] *Xactware, Inc. v. Symbility Solution Inc.*, 402 F.Supp. 2d 1359, 1363 (D. Utah 2005) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123–24 (W.D. Pa. 1997)). *See also Soma Medical Int'l*, 196 F.3d at 1296.

[10] *Zippo*, 952 F.Supp. 2d at 1123–24.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

finalized on the websites and implies that its websites are similar to the informational website at issue in *Soma*. The Court disagrees. Customers to Defendant's websites are encouraged to browse Defendant's products, to choose the products the individual wishes to purchase, which are then placed in a virtual "shopping cart." The customer, upon finalizing their selection, is directed to a virtual "checkout," where the customer enters into a contract to purchase the products and provides personal contact information or provides an e-mail and password, if previously registered with the websites, in order to retrieve saved customer data. If the product is a prescription eye care product, Defendant will verify the customer's prescription with the customer's eye care professional, and then the order is shipped.

Defendant argues, however, that total sales to Utah comprised only 0.33% of Defendant's total revenues, and that under *Soma*, general personal jurisdiction is inappropriate when the percentage of total sales are so low. Defendant misinterprets the holding of *Soma*. The Tenth Circuit, in *Soma*, cited the Court of Appeals of Utah, in *Buddensick v. Stateline Hotel, Inc.*,[16] for a list of twelve potentially relevant factors in determining whether personal jurisdiction was proper in Utah.[17] The percentage of national sales revenue generated in the forum state was the last of twelve factors listed by the Utah court and cited by the Tenth Circuit. However, the Tenth Circuit then proceeded to address the issue of general personal jurisdiction over internet businesses without further referencing the list of potentially relevant factors.[18] Thus, by adopting the "'sliding scale'

---

[16]972 P.2d 928 (Utah Ct. App. 1998).

[17]*Soma*, 196 F.3d at 1296 (citing *Buddensick*, 972 P.2d at 930-31).

[18]*Id.*

for evaluating jurisdiction,"[19] the Tenth Circuit simplified the analysis for whether the use of a website subjects the owner to personal jurisdiction by consolidating the list of potentially relevant factors into the analysis of the extent of business conducted on the website.

Following the Tenth Circuit's holding, the Court finds that Defendant conducts business in Utah via the Internet. That finding, alone, would be sufficient for the Court to exercise personal jurisdiction over Defendant. In addition, Defendant often follows up on the business transactions conducted on its website with a phone call directly to the eye care professional who can verify the prescription of Defendant's customers. Each sale to a Utah customer, therefore, would possibly have been accompanied by a phone call by Defendant to Utah eye care providers to verify prescriptions. These actions on the part of Defendant are further evidence of substantial and continuous activity in Utah, and further support a finding of the Court's general personal jurisdiction over Defendant.

    2.    *Specific Jurisdiction*

When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[20] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[21]

Defendant has chosen to engage in a nationwide internet business, including advertising that may be viewed by individuals in the state of Utah. Moreover, Defendant concedes that it has sold,

---

[19]*Id.* (quoting *Patriot Sys., Inc. v. C-Cubed Corp.*, 21 F. Supp. 2d 1218, 1323-24 (D. Utah 1998)).

[20]*Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[21]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

and continues to sell, products to Utah residents, entering into contractual agreements with those Utah residents for the sale of its products. The Court finds that Defendant has purposefully directed its activities at the state of Utah, through its advertising and sale of products to Utah residents and the Court, therefore, has specific personal jurisdiction over Defendant.

3.  *Reasonableness of Personal Jurisdiction*

The Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case, or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[22] "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[23]

Defendant does not argue that personal jurisdiction is unreasonable and only the first factor argues against reasonableness. Defendant does not own any property or employ any employees in Utah, so there will be some burden associated with having to defend itself in Utah. However, that burden is offset by the convenience to Plaintiff of litigating in Utah, where it has its primary place of business. The Court, therefore, finds that personal jurisdiction over Defendant is reasonable.

---

[22] *Burger King*, 471 U.S. at 476.

[23] *Bell Helicopter*, 385 F.3d at 1296.

B.     VENUE

Alternatively, Defendant argues that if there is personal jurisdiction, venue is improper under 28 U.S.C. § 1391(b), which provides that venue is proper in: (1) a district where any defendant resides; (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  Plaintiff argues that venue is proper because § 1391(c) provides that, for purposes of venue, a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction."  Defendant argues that, as a professional association, it is an unincorporated entity, and may not, therefore, be considered a corporation.  However, long-standing Supreme Court precedent holds that "it most nearly approximates the intent of Congress to recognize the reality of the multi-state, unincorporated association . . . and to permit suit against that entity, like the analogous corporate entity, wherever it is 'doing business.'"[24]  Moreover, federal courts have long applied  § 1391(c) to unincorporated associations in the past, including partnerships,[25] foreign trusts,[26] national trade associations,[27] and others.  Defendant argues, however,

---

[24]*Denver & Rio Grande Western R.R. Co. v. Bhd. of Railroad Trainmen*, 387 U.S. 556, 562 (1967).

[25]*Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1220 (5th Cir. 1969) (holding that an unincorporated business organization resides in a district in which it does business).  *See also Injection Research Specialists v. Polaris Indus., L.P.*, 759 F. Supp. 1511, 1513 (D. Colo. 1991) ("[T]he judicial trend in venue determinations is to treat partnerships like corporations, *i.e.*, as separate jural entities subject to suit wherever they do business.").

[26]*Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 28 (S.D.N.Y. 1991).

[27]*Certainteed Corp. v. The Cellulose Insulation Mfrs. Assoc.*, 2003 U.S. Dist. Lexis 4995, *3 (E.D. Pa. Mar. 24, 2003).

that courts have been unwilling to expand the definition further.[28]  However, the case law offered by Defendant indicates that courts have merely refused to extend the definition to cover individuals[29] and government entities, neither of which can reasonably be analogized to corporations.

Defendant attempts to analogize itself as a sole proprietorship, albeit one with a national reach.  The Court disagrees.  Defendant is a Texas professional association, organized under the Texas Professional Association Act (the "Act").[30]  While the Act distinguishes professional associations from partnerships or corporations, it defines the purpose of a professional association as allowing "one or more persons duly licensed to practice a profession . . . [to] associat[e] themselves for the purpose of performing professional services and dividing the gains therefrom as stated in articles of association or bylaws."[31]  Notwithstanding Defendant's arguments to the contrary, the Court finds that there is no distinguishable difference between a partnership or a corporation and a professional association for the purposes of venue.  The Court finds that Defendant may be considered as a corporation under § 1391(c), and because the Court has personal jurisdiction over Defendant, the Court finds that venue is therefore proper under § 1391(b).

---

[28]*Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449, 459 (S.D.N.Y. 2000).

[29]*PKWare v. Meade*, 79 F. Supp. 2d 1007, 1018 (E.D. Wis. 2000) (refusing to consider an individual defendant as a corporation); *Hsin Ten Enterprise USA, Inc.*, 138 F. Supp. 2d at 459 (refusing to consider a nationwide sole proprietorship as a corporation for venue purposes); *Kabb, Inc. v. Sutera*, 1992 WL 245546, *2 (E.D. La. Sept. 4, 1992) (expressing doubt that a sole proprietorship qualifies as a corporation under § 1391(c)).

[30]Tex. Rev. Civ. Stat. Ann. Art. 1528f, § 24, Sec. 2(A).

[31]*Id.*

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss or in the Alternative to Transfer Under Fed. R. Civ. P. 12(b) for Lack of Personal Jurisdiction and Improper Venue (Docket No. 26) is DENIED.

DATED   June 4, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge