IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| 1-800CONTACTS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MEMORIAL EYE, P.A. d/b/a as SHIPMYCONTACTS.COM, SHIP-MY-CONTACTS.COM AND IWANTCONTACTS.COM, a Texas Professional Association,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS/STRIKE CERTAIN COUNTERCLAIMS/AFFIRMATIVE DEFENSES AND FOR A MORE DEFINITE STATEMENT<br><br>Case No. 2:08-CV-983 TS |

This matter is before the Court on Plaintiff's Motion to Dismiss/Strike Certain Counterclaims/Affirmative Defenses and For a More Definite Statement.

**I. Jurisdiction and Venue**

This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). Venue is proper pursuant to 28 U.S.C. §

1391(b).

## II. Overview

Plaintiff argues that some of Defendant's counterclaims and defenses should be dismissed and/or stricken for a variety of reasons. First, Plaintiff argues that it filed this action in order to protect its trademark rights and is, therefore, protected by the *Noerr-Pennington* Doctrine. The *Noerr-Pennington* Doctrine is based on the Sherman Act and the right to petition the government.[1] If Plaintiff is protected by the *Noerr-Pennington* Doctrine, the Court may dismiss all counterclaims and defenses related to antitrust. *Noerr-Pennington* protects the filing of a lawsuit from attack unless the suit was brought as a mere sham.[2] Plaintiff also seeks dismissal based of impermissable defenses raised by Defendant. Plaintiff then seeks a more definitive statement on the counterclaims and defenses not dismissed or stricken.

Because the Court finds that Plaintiff is entitled to *Noerr-Pennington* immunity, the counterclaims and affirmative defense related to antitrust will be dismissed. However, the Court will not strike any remaining defenses. Further, the Court will order a more definitive statement in regards to two specific defenses.

## III. Background

Plaintiff, 1-800 Contacts ("1-800"), is in the business of internet contact lense sales. Plaintiff alleges that Defendant, Memorial Eye, has engaged in trademark infringement, unfair competition, false designation of origin, false advertising, passing off, and unjust enrichment by willful infringement of its trademarks, 1800CONTACTS, 1-800 CONTACTS, and 1 800

---

[1]*Cardtoons v. Major League Baseball Players Assoc.*, 208 F.3d 885, 890 (10th Cir. 2000).

[2]*Prof'l Real Estate Investors, Inc. v. Columbia Pictures*, 508 U.S. 49, 56 (1993).

CONTACTS (the "1-800 CONTACTS Marks").  Specifically, Plaintiff alleges that Defendant purchased sponsored advertising on search engines, such as Google, so that the 1-800 CONTACTS marks trigger the advertising and/or links to Defendant's website.

The mechanics behind Google's advertising programs (Adword and Keyword) were described by the Second Circuit in *Rescuecom Corp. v. Google Inc*.[3]  Google's Adword program allows advertisers to purchase terms that trigger their advertisement to be placed on the search result screen next to whatever links the searcher was looking for when they entered the terms.[4]  The purchase of a particular term causes the advertiser's ad and link to appear on the user's screen whenever a searcher launches a Google search using the purchased terms.[5]  An advertiser can essentially purchase any term, including the names of its competitors, or their trademarks. Google Keyword recommends terms for advertisers to purchase.[6]

Because of these programs, a search on Google reveals more than an advertisement, it reveals a link to the advertiser's website enabling the searcher to click the link, open the advertiser's webpage and purchase whatever provider's goods and services it was seeking from the advertiser instead.[7]

Internet advertising also occurs through pop-ups.  A pop-up occurs when the web site

---

[3] 562 F.3d 123 (2d Cir. 2009).

[4] *Id*.

[5] *Id*.

[6] *Id*. at 126.

[7] *Id*. at 125.

being viewed by the user opens a new browser window to display an advertisement.[8]

### IV. Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Defendant as the nonmoving party.[9] However, a court may not decide disputed issues of fact or consider evidence outside the pleadings.[10] This standard applies to both the original and amended complaint.[11] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[12] But, the court "need not accept conclusory allegations without supporting factual averments."[13] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[14]

The Supreme Court explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.[15] Thus, the mere

---

[8]http://www.merriam-webster.com/dictionary/pop-up.

[9]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[10]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Jones v. United States*, 2009 WL 4071835, at *2 (10th Cir. Nov. 25, 2009).

[11]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[12]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[13]*Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[14]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[15]*Twombly*, 550 U.S. at 547.

metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[16]

## V. Discussion

A. Noerr-Pennington Immunity

Plaintiff argues that it is immune, based on *Noerr-Pennington*, from counterclaims seven and eight, and affirmative defense twenty five, because they are based on antitrust violations in connection with this lawsuit filed by Plaintiffs. Defendant argues that Plaintiff is not immune because this lawsuit is objectively baseless.

The *Noerr-Pennington* Doctrine is based on both the Sherman Act and the right to petition the government. "In recognition of this right, the United States Supreme Court has held that . . . organizations are immune from liability under antitrust laws for actions constituting petitions to the government."[17] The Doctrine, therefore, "immunizes from antitrust liability bona fide lobbying and litigation efforts."[18] However, if the litigation is a "sham" there is no immunity.[19] "[L]itigation cannot be deprived of immunity as a sham unless the litigation is objectively baseless."[20] If the litigation is not objectively baseless, it can not be a "sham"

---

[16] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[17] *Searle v. Johnson*, 646 P.2d 682, 684 (Utah 1982).

[18] *W.H. Brady Co. v. Lem Prods., Inc.*, 659 F.Supp 1355, 1371 (N.D. Ill. 1987); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 263 (7th Cir. 1984) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1961)).

[19] *Prof'l Real Estate Investors,* 508 U.S. at 51.

[20] *Id*.

regardless of the subjective intent.²¹ "To ascertain baselessness, a court must consider whether the litigant had 'probable cause to initiate the legal action.'"²²

Defendant states this case is baseless because the theory that Defendant has purchased "[Plaintiff's] trademarks, minor variations and misspellings as keyword/search terms from Internet search engines" has been raised for the first time in this Motion.²³ Defendant also relies on *1-800 Contacts, Inc. v. WhenU.com, Inc.*,²⁴ to show that Plaintiff's position is objectively baseless because it was expressly rejected by the *WhenU* court as failing to identify a "use in commerce."²⁵ Defendant further argues that it has not purchased the alleged keywords and that its appearance in a search is the result of search engine algorithms.

Plaintiff argues Defendant's interpretation of *WhenU* was specifically held to be incorrect in *Rescuecom Corp. v. Google, Inc.*²⁶ Plaintiff also argues that because "numerous plaintiffs – including in this Circuit – have obtained favorable rulings in identical situations involving the purchase of trademarks as keywords/search terms from Internet search engines,"²⁷ this suit cannot be baseless. Defendant argues that Plaintiff may not use the holding in *Rescuecom* to

---

²¹*Id.* at 57.

²²*Cardtoons*, 182 F.3d at 1136.

²³Memorial Eye's Memorandum in Opposition to 1-800-Contacts, Inc.'s Motion to Dismiss/Strike Certain Counterclaims/Affirmative Defenses and For a More Definitive Statement, Docket No. 37, at 2.

²⁴414 F.3d 400 (2d Cir. 2005)

²⁵Docket No. 27 at 2; *WhenU*, 414 F.3d at 409-12.

²⁶562 F.3d 123 (2d Cir. 2009).

²⁷Docket No. 36-2 at 5.

support its position that its claim is not baseless because that decision came down after Plaintiff filed this action.

The Court finds the fact that the law has changed at least once since this action was filed is evidence that this is a developing area of the law. Therefore filing new suits with new facts, and proposing new arguments, at a time when there was no case law directly on point, does not constitute a sham. Accordingly, the Court should consider the later case law. Regardless, the Court finds there was sufficient Tenth Circuit case law in existence at the time this action was filed to support Plaintiff's claim.

In order to understand the parties' arguments regarding subsequent case law, an in-depth discussion of both *WhenU* and *Rescuecom* is necessary.

As explained by the *WhenU* court, WhenU.com, was an internet marketing company, that used proprietary software to monitor a computer user's internet activity in order to provide the user with pop-up advertising.[28] 1-800 Contacts owned a trademark "we deliver. you save," and had applied to register "1-800CONTACTS" as well.[29] 1-800 Contacts filed a complaint against WhenU alleging that WhenU was infringing on its trademarks by causing pop-ups of 1-800 Contact's competitors to appear on a user's desktop when the user accessed the 1-800 Contacts website. The *WhenU* court held that WhenU did not "use" the trademark within the meaning of the Lanham Act, because it failed to allege a "use in commerce" as defined in the Act.[30]

At the time the WhenU case was litigated, WhenU used software whose internal directory

---

[28] *WhenU*, 414 F.3d at 402.

[29] *Id*.

[30] *Id*; *Rescuecom Corp. v. Google Inc.*, 562 F.3d at 127.

7

consisted of "approximately 32,000 [website addresses] and [address] fragments, 29,000 search terms and 1,200 key word algorithms."[31] The program correlated terms searched by a user to particular consumer interests allowing the software to find terms it recognized, select advertising from the same category and display it as a pop-up on the user's screen.[32] 1-800 made three main arguments: (1) when the pop-up ads appear on or over their website the appearance changed and created the impression that the ad was an integral and authorized part of the website; (2) the pop-up ads interfered with carefully designed display, alerting a users access to the website, and in essence "free-riding" on the goodwill and substantial recognition associated with its marks; and (3) WhenU's use of the marks created a likelihood of confusion.[33]

As stated above, the Second Circuit found WhenU was not using the marks in commerce as defined by Lanham Act because it did not place, reproduce or display the trademark on any goods in order to pass them off as emanating from or authorized by 1-800.[34] The court also found a difference between the actual mark, 1-800CONTACTS, and the website www.1800Contacts.com, which was reproduced by WhenU.[35] The court found WhenU was clearly using the website address solely because it was a website, irrelevant to the fact that it closely resembled the trademark, and that listing the website in its internal directory did not

---

[31]*WhenU*, 414 F.3d at 404 (citing *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734, 743 (E.D. Mich. 2003).

[32]*Id.*

[33]*Id.*

[34]*Id.* at 408.

[35]*Id.* at 409.

create a possibility of confusion.[36] The court also noted that WhenU did not disclose the contents of its directory to clients, nor allow clients to purchase specified keywords to add to the directory.[37] The court focused on the fact that WhenU did not link trademarks to any particular competitor's ads and customers could not pay to have their pop-ups linked to specific websites.[38]

In reaching its ultimate decision, the court stated that the pop-up advertisements were not a "use" because the trademark was not displayed and the pop-up was not contingent upon or related to the trademark, the trademark appearance on 1-800's website, or the mark's similarity to the website.[39] The court found the pop-up would appear even if the trademarks were not displayed on WhenU's own internal website.[40] In summary, the court stated, "WhenU's activities do not alter or affect 1-800's website in any way. Nor do they divert or misdirect [users] away from 1-800's website, or alter in any way the results a [user] will obtain when searching with the 1-800 trademark or website address."[41]

Four years after the *WhenU* decision, the Second Circuit revisited its holding in *Rescuecom Corp. v. Google Inc.*[42] In that case, a trial court in the Northern District of New York granted Google's motion to dismiss, based upon what the Second Circuit called a

---

[36]*Id*.

[37]*Id*.

[38]*Id*. at 412.

[39]*Id*. at 410.

[40]*Id*.

[41]*Id*.

[42]562 F.3d 123.

9

misunderstanding of *WhenU*.[43] The trial court relied on the "internal use" rationale of *WhenU* to find the manner in which Google used Rescuecom's trademark, recommending or selling it as a keyword, was not a "use in commerce."[44] However, the Second Circuit reversed, finding that the facts were materially different from *WhenU* and that Rescuecom's complaint adequately plead a "use in commerce."[45]

As explained by the Second Circuit, Rescuecom is a national computer service franchise that conducts a substantial amount of its business over the internet. At all times pertinent to the litigation, Rescuecom was a registered trademark.[46] The focus of the *Rescuecom* circuit court's analysis was Google's Adword/Keyword programs. When a search is performed by a user, as a result of Google's programs, advertisements appear on the result screen in one of two ways, either as a "sponsored link" listed as the first few results or directly next to the result of the search in a separate column.[47] Because of the placement of the advertisements, Rescuecom argued that a user could be easily misled to believe the results appearing on the screen were part of the relevance based search result, and the appearance of a competitors' advertisements and links resulting from the search of its trademark was likely to cause trademark confusion.[48]

---

[43]*Id*. at 124.

[44]*Id*. at 127.

[45]*Id*. at 128.

[46]*Id*. at 125.

[47]Rescuecom alleged that Google fails to label links that appear as paid advertising as such, which has the potential to mislead a user into believing they are actually the top search results instead of paid advertising. *Id*. at 126.

[48]*Id*. at 126.

Further, it was alleged that Google made 97% of its revenue from the sale of advertisements through both the Adword and Keyword programs, thereby giving it an incentive to increase the number of advertisements and links appearing for every term entered into the search.[49]

The *Rescuecom* court found the conduct in *WhenU* was different from *Rescuecom* because the pop-up ad in *WhenU*, appeared in a separate browser window from the one accessed by the user with a frame detailing defendant WhenU's name. Therefore, it created no confusion for the user as to the nature of the pop-up as an advertisement, nor as to the fact that WhenU, not the trademark/website proprietor (1-800), was responsible for the advertisement.[50]

Under the Lanham Act, liability is imposed for "unpermitted 'use in commerce' of another's mark which is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation or as to the origin, sponsorship, or approval of his or her goods or services . . . by another person."[51] The Second Circuit distinguished its ruling in *WhenU* from *Rescuecom* in two ways. First, it stated that in *WhenU*, "defendant did not use, reproduce, or display the plaintiff's mark *at all*."[52] Moreover, the term triggering the pop-up was the website address, not a trademark.[53] Second, because advertisers were not able to request or purchase specific keywords to trigger their ads, there was no use in commerce.[54] The pop-up in *WhenU* was controlled by the

---

[49]*Id*.

[50]*Id*. at 128.

[51]*Id*. (quoting 15 U.S.C. § § 1114, 1125(a)(1)(A)) (internal citations omitted).

[52]*Id*. (emphasis in original).

[53]*Id*.

[54]*Id*. at 128-29.

category associated with the website or keyword, as opposed to the website or keyword itself.[55] Similarly, the Second Circuit stated, where defendant in *WhenU* did not use, display, or sell trademarks, in *Rescuecom* Google did display, offer and sell trademarks to advertising customers in order to sell its services.[56] Google also recommended and sold the trademarks themselves.[57] Therefore, the Second Circuit found that Google both used and sold trademarks in commerce in accordance with the act.[58] In rejecting Google's argument that its practices were no different than the product placement analysis the Second Circuit used in *WhenU*, the Second Circuit clarified that it is not the term "product placement" that shields liability, but the fact that it is such a benign practice that it is unlikely to cause customer confusion.[59]

Use however, is not enough. It is the "unauthorized use, which 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . or as to the origin, sponsorship, or approval of . . . goods or services,'" which creates liability under the Act.[60] In the end, the Second Circuit made no determination regarding Rescuecom's likelihood of showing confusion, it only clarified *WhenU*, and the standard to be applied in such cases.

In its Complaint, Plaintiff alleges that Defendant "purchased sponsored advertisements from Google, and other search engines," thereby infringing, directly, jointly and contributorily,

---

[55]*Id*. at 129.

[56]*Id*.

[57]*Id*.

[58]*Id*.

[59]*Id*. at 130.

[60]*Id*; 15 U.S.C. § 1125(a).

on its trademarks based on unauthorized appropriation and use of Plaintiff's marks in connection with goods and services in such a manner that is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's services and commercial activities.[61] Plaintiff includes in its Complaint, a snapshot of a result page after 1800Contacts was searched, revealing links to Defendant's website in the "sponsored link" section.[62] Defendant argues that Plaintiff has only alleged for the first time in this Motion that its claim is based on Defendant's purchase of Plaintiff's trademarks. The Court finds this argument irrelevant, the federal system is one of notice, not fact, pleading.[63] Plaintiff alleges that Defendant has purchased advertising on internet search engines. Considering the way such advertising functions, it appears inherently necessary that certain key terms were purchased, some of which may or may not have been Plaintiff's marks. The Court finds that Plaintiff sufficiently put Defendant on notice of the claims against it without specifying exactly what terms they purchased.

As stated above, a key rationale for the holding in *WhenU* was the fact that there was no use, reproduction or display of the mark in question.[64] The Second Circuit itself distinguished its ruling in *WhenU* from the type of conduct alleged in this action. Although *Rescuecom* had not been decided at the time this action was filed, it is entirely plausible that Plaintiff also recognized the factual differences between the cases. Moreover, the *WhenU* court explicitly stated that its reasoning in *WhenU* was based on a finding that there was no use in commerce in that case, but

---

[61]Docket No. 2 ¶¶ 1, 18, 35.

[62]*Id.* at 5.

[63]*Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1385 (10th Cir. 2009).

[64]*Rescuecom*, 562 F.3d at 128.

did not foreclose the possibility that similar conduct in other contexts would be actionable, thereby opening the door for litigants asserting different facts and arguing different positions.[65]

The Tenth Circuit came to a similar conclusion as the Second Circuit's *Rescuecom* in *Australian Gold, Inc. v. Hatfield*,[66] cited by Plaintiff in support of its position that the claim is not baseless. In *Australian Gold*, defendants used plaintiff's trademarks on their website and purchased plaintiff's trademarks on a search engine in order to appear as one of the first few sites listed when a user searched the trademark.[67] In analyzing the likelihood of confusion element of the Lanham Act, the Tenth Circuit recognized an "initial interest confusion," occurring "when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or similar mark."[68] Courts have found that this type of unauthorized use of a trademark to divert internet traffic, capitalizes on the trademark holder's goodwill.[69] The Tenth Circuit found the conduct to be a violation of the Lanham Act.

In the case currently facing the Court, Plaintiff has alleged that Defendant purchased some keywords related to Plaintiff's website and or trademark. Therefore, according to *Rescuecom*, the allegations in Plaintiff's Complaint plead a use in commerce. Moreover, the Tenth Circuit has held that the purchase of another's trademark through a search engine for the purpose of diverting internet traffic and using goodwill associated with that trademark, as alleged

---

[65]*Id*.

[66]436 F.3d 1228 (10th Cir. 2006).

[67]*Id*. at 1233, 1240.

[68]*Id*. at 1238.

[69]*Id*. at 1239 (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004); *See also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1061-65 (9th Cir. 1999); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808. 814 (7th Cir. 2002); *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700, 701, 706 (E.D.Va. 2004).

here, violates the Lanham Act.⁷⁰ Consequently, the Court finds that Plaintiff's claim is not baseless and, it is therefore, protected by *Noerr-Pennington* immunity. Based on this conclusion, the Court will grant Plaintiff's motion to dismiss the antitrust-related counterclaims, seven and eight, and the parallel affirmative defense twenty-five.

Defendant argues that its appearance among the sponsored links list is due to the search engine's own algorithms and not on its purchase of keywords. Analysis of this argument would require the Court to make evidentiary findings which is not permissible in a motion to dismiss.

Because the Court finds that Plaintiff is entitled to *Noerr-Pennington* immunity, the Court need not address the alternative arguments relating the failure to state a claim under the Sherman Act.

B. Impermissible Defenses

Plaintiff argues that seventeen of Defendant's affirmative defenses are impermissible as a defense to infringement of an incontestable trademark. Plaintiff alleges that its word mark 1800CONTACTS and stylized mark 1 800 CONTACTS became incontestable in February and August 2008, respectively. Plaintiff asserts that the only permissible defenses to its claim are: fraud, abandonment, misrepresentation, fair use, prior use, violation of antitrust laws, functionality, and equitable principles.⁷¹ Defendant seemingly argues that it is pleading defenses to incontestable trademarks in addition to Plaintiff's state law claims. In that vein, Defendant argues that 15 U.S.C. § 1115(b) neither speaks of affirmative defenses that may be plead against state law claims, nor bars defenses related to procedure, time, damages, antitrust or other trademark defenses. Defendant argues that Plaintiff relies on an affidavit to show the mark is

---

⁷⁰*Australian Gold*, 436 F.3d at 1239.

⁷¹ *See* 15 U.S.C. § 1115(b).

15

inconstetable, and as this is not a motion for summary judgment, the affidavits should be stricken. Defendant further asserts that trademark misuse is a viable affirmative defense.

"If a party submits, and the district court considers, materials outside the pleadings the matter must be resolved under summary-judgment principles rather than under Rule 12."[72] Affidavits are outside the pleadings.[73] Because Plaintiff has alleged the incontestability of its marks through affidavit, the Court may not accept that allegation as true for the purpose of this motion. Therefore, at this stage Defendant is not restrained from pleading defenses other than those included in § 1115(b). Accordingly, it is irrelevant whether Defendant is pleading defenses to federal or state claims. Therefore, the Court will not bar the defenses requested by Plaintiff.

*Juno Online Servs., L.P. v. Juno Lighting*,[74] cited by both Plaintiff and Defendant states that the misuse defense has enjoyed a "substantial history in the field of trademarks."[75] The *Juno* Court went on to note that the defense has been available based on equitable principles or as part of a successful antitrust claim.[76] Plaintiff cites other cases also stating that such a defense is available.[77] Defendant recognizes that if this defense is available, it is only available in relation to antitrust or unclean hands. Although Defendant will be permitted to assert such a defense in

---

[72]*Jones*, 2009 WL 4071835, at *2.

[73]*Lucero v. Gunter*, 52 F.3d 874, 877 (10th Cir. 1994).

[74]979 F.Supp. 684 (N.D. Ill. 1997).

[75]*Id*. at 688.

[76]*Id*.

[77]*See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. supp 1309 (S.D.N.Y. 1969) (declining to accept the view that the misuse defense should be unavailable as a matter of law); *Northwestern Corp. v. Gabriel Mfg. Co.*, 1998 WL 525431, at *7 ("when a trademark infringement plaintiff violates the public policy it is based upon – providing consumers with clear product identifiers – then the trademark misuses defense will permit the court to exercise its equitable powers and deny enforcement of the trademark").

regards to unclean hands, the Court will not permit it to assert the defense in relation to its antitrust claims, because as previously stated, Defendant is barred from bringing those claims.

In its arguments regarding its ability to raise this defense, Defendant again asserts that it can successfully plead and prove a § 1 Sherman Act claim. In order to plead a § 1 Sherman Act violation, Defendant must allege more than unilateral activity.[78] Defendant argues that it is Plaintiff's alleged scheme — to sue or threaten its competitors on the same theories advanced in this suit, then settle reaching agreements precluding competitors from having their sponsored links appear when 1-800 Contacts is entered into a search engine — that demonstrates the conduct amounts to more than Plaintiff's unilateral activity. However, these allegations allege only acts of Plaintiff. Therefore, the allegations set forth by Defendant do not establish a concert, combination of action or conspiracy among multiple parties as required by the Act.

C. Insufficient Pleading

Plaintiff alleges that the defenses and counterclaims asserted by Defendant are insufficiently plead. Defendant submits that their defenses are sufficiently plead.

Rule 8 states: "In responding to a pleading, a party must state in short and plain terms its defenses to each claim asserted against it."[79] Defendant asserts defenses such as: "At least one of the trademarks asserted is invalid," and "One or more marks asserted has become generic."[80] The Court finds the remaining defenses are sufficiently plead within the rules. To the extent that the above-referenced defenses are insufficiently plead, the Court will order Defendant to supply a

---

[78] *See* 15 U.S.C. § 1; *Consolidated Farmers Mut. Ins. Co. v. Anchor Sav. Ass'n*, 480 F. Supp 640, 648 (D. Kan 1979) (citing *Card v. Nat'l Life Insur. Co.*, 603 F.2d 828, 834 (10th Cir. 1979)).

[79] Fed. R. Civ. P. 8.

[80] Docket No. 34, affirmative defenses 2, 7.

more definitive statement.

## VI. Conclusion

Based on the above it is hereby

ORDERED that Plaintiff's Motion to Dismiss/Strike Certain Counterclaims/Affirmative Defenses and For a More Definitive Statement (Docket No. 36) is GRANTED IN PART AND DENIED IN PART consistent with this order.

DATED   March 15, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge