Anthony W. Hong
(Admitted *pro hac vice*)
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
Telephone: (713) 432-9992
Facsimile: (713) 432-9984
Email: awhong@lawgroupip.com

OF COUNSEL

D. Scott Crook (#7495)
Kathryn J. Steffey (#10245)
SMITH HARTVIGSEN, PLLC
215 South State Street, Suite 650
Salt Lake City, Utah 84111
Telephone: (801) 413-1600
Facsimile: (801) 413-1620
Email: scott.crook@smithlawonline.com
Email: ksteffey@smithlawonline.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| 1-800-CONTACTS, INC., | Case No.: 2:08-cv-983 |
|---|---|
| Plaintiff, | **EXPENDED CONSIDERATION REQUESTED** |
| v. | District Judge Ted Stewart |
| MEMORIAL EYE, P.A., d/b/a SHIPMYCONTACTS.COM, SHIP-MY-CONTACTS.COM, and IWANTCONTACTS.COM | Magistrate Judge Samuel Alba |
| | **DEFENDANT MEMORIAL EYE'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS** |
| | **DEFENDANT MEMORIAL EYE'S MOTION TO COMPEL DEPOSITIONS** |
| | **DEFENDANT MEMORIAL EYE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR SANCTIONS** |

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

1

Defendant Memorial Eye, P.A. ("Memorial Eye") respectfully files this Response to Plaintiff's Motion to Compel Depositions and for Sanctions that was filed on July 29, 2010, and further moves to compel the depositions of two witnesses employed by Plaintiff 1-800-CONTACTS who Plaintiff has refused to present for depositions - David Zeidner, the in house business and intellectual property attorney who verified Plaintiff's answers and Jonathan Coon, the Plaintiff's CEO, to compel the production of documents and moves for the imposition of sanctions.

## I.

## BACKGROUND

Plaintiff 1-800-Contacts, Inc. ("1-800-Contacts" or Plaintiff) filed this lawsuit in December 2008 alleging trademark infringement of its mark (1 800 contacts) by Defendant Memorial Eye, P.A. ("Memorial Eye" or Defendant), apparently because Defendant's URL sometimes appears as a sponsored link or advertisement when users input 1-800-contacts into the search box of an internet based search engine such as google.com.

Memorial Eye – like 1-800-Contacts – participates in the sponsored advertisement programs of various internet search engine providers, which generates a link to participants' websites if prospective customers use certain search terms generic to the products sold in the industry (such as "contacts," "lens," etc.). For contact lens sellers, like 1-800-Contacts, that incorporate generic terms, e.g. "contacts" (that as a matter of law cannot be trademarked)[1] into their names, the "broad match" algorithms adopted by internet search engines – which turn up

---

[1] "Underlying the genericness doctrine is the principle that some terms so directly signify the nature of the product that interests of competition demand that other producers be able to use them even if terms have or might become identified with a source and so acquire 'de facto' secondary meaning." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 304 (3d Cir. 1986). A generic mark receives no protection whatsoever. *A.J. Canfield*, 808 F.2d at 297.

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

2

variants on the query entered into the search engine -- sometimes turn up competitors' website URLs – *in addition to* – website URLs for the specific company name searched for – in effect generating a directory of contact lens sellers from which a consumer can choose. This can occur even if such competitors never advised the internet search engine provider to use, or, in other words, purchased from the internet search engine provider for use, competitors' trademarks (1-800-Contacts's marks for example) as a keyword (or embedded trigger) for web based searches.[2]

1-800-Contacts's Complaint alleges that Memorial Eye has used and infringed its trademark because Memorial Eye's website URL sometimes appears (along with 1-800-Contacts's website URL and that of many other online contact lens sellers) when consumers type "1 800 contacts" into a search engine.[3] 1-800-Contacts also claims, in its amended interrogatory answers for the first time that were not sent out until after June 25, 2010, that Memorial Eye has purchased its trademark as a keyword in connection with internet search engines.

With respect to alleged infringement even in the absence of Memorial Eye's purchase of 1-800-Contacts' trademark as a search key word, 1-800-Contacts took that very position in an earlier case and it was expressly rejected by the Second Circuit in *1-800-Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005), as failing to identify a "use in commerce"[4] of the mark and no case, cited by 1-800-Contacts or otherwise, has ever endorsed the position since rejected by the Second Circuit. Indeed, the position that 1-800-Contacts has pled if adopted as the law of the land would mean that 1-800-Contacts's own participation in sponsored internet

---

[2] *Rhino Sports, Inc. v. Sport Court, Inc.*, No. CV-02-1815-PHX-JAT, at [22], [29] (D. Ariz. May 2, 2007) (appended hereto as Exhibit A).

[3] Complaint ¶¶ 18-19.

[4] 15 U.S.C. §1114(1)(a); *WhenU*, 414 F.3d at 409-412.

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

3

search advertising plans is unlawful and that the participation of many, many other companies across many different industries is likewise unlawful.[5]

Defendant Memorial Eye, P.A. counterclaimed under the "palming off" provision of the Lanham Act,[6] which does not require a federally registered mark,[7] and state law causes of action that also do not require that Memorial Eye have a federally registered mark and asserted numerous defenses, including those going to the validity of 1-800-Contacts' asserted mark and the defenses of "unclean hands" and, relatedly, "trademark misuse."  These counterclaims and the affirmative defenses of unclean hands and trademark misuse assert,[8] among other things, that Plaintiff is or has been engaged in the very behavior – purchase of competitors' trademarks as keywords and use of broad match search algorithms without concomitant negative keywords – that it is accusing others, including Defendant, of doing.

Based on information and belief after reasonable investigation, the defense of unclean hands has been asserted against Plaintiff in another pending trademark case in which Plaintiff

---

[5] The phenomenon of search engines turning up competitors' website URLs as sponsored links in addition to links to the website URLs of the company specifically searched for can arise from these search engines' "broad matching" search algorithms – not necessarily from companies purchasing their competitors' trademarks for use as search key words.  A keyword is a term that, if entered as a query in an internet search engine, triggers the appearance of the advertising company's ad and link.  *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 125 (2d Cir. 2009).

"When a keyword uses the broad match service, it may trigger the purchaser's ad to be displayed as a sponsored link when that keyword or terms similar to the keyword appear in a user's query.  For example, if the keyword purchased is 'courts,' and the keyword is broad matched, the purchaser's ad could appear when users enter 'basketball court,' 'federal court,' 'court flooring,' or even 'sport court' (with or without quotation marks)." *Rhino Sports, Inc*, at [22] (**Exhibit A**).

Likewise, an internet contact lens seller that purchased the keyword "contacts" (a generic term that cannot be trademarked) could have its website URL appear as a sponsored link when users enter "1 800 contacts" (or "contact lens" or "find contacts") as a query, even though there has been no purchase of the keyword "1 800 contacts."  No court has ever held that the purchase and subsequent broad matching of generic keywords (like "contacts") represents a "use in commerce" of any trademarks that happen to contain those generic keywords.

[6] 15 U.S.C. §1125(a).

[7] *Malletier v. Dooney & Bourke, Inc*., 454 F.3d 108 (2d Cir. 2006).

[8] First Amended Answer and Counterclaim [Doc. 51].

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

4

filed a nearly identically worded complaint against Lens.com.[9] In that case, as in the pending case, the unclean hands defense is based on evidence that Plaintiff has purchased competitors' trademarks for use as keywords in internet search advertising and on evidence that it has used broad match search algorithms on internet search engines without concomitant negative keywords.

In March of 2010, after the court had sustained Defendant's counterclaims (except for its antitrust counterclaim) and affirmative defenses based on unclean hands and trademark misuse against Plaintiff's attempt to have them dismissed under Federal Rule of Civil Procedure 12,[10] counsel for Plaintiff contacted counsel for Defendant for the first time to put together a discovery plan pursuant to Rule 26. At the time, 1-800-Contacts' counsel requested and received a 60 day enlargement of time to produce its initial disclosures.[11] Memorial Eye's counsel agreed to the substantial enlargement with the understanding that 1-800-Contacts would produce documentary initial disclosures.

On May 17, 2010, the enlarged deadline for initial disclosures, Defendant received a two page pleading from Plaintiff with three witness names and five categories of documents but no documents of any kind whatsoever.[12] In contrast, Plaintiff produced nearly nine hundred pages of nonconfidential documents and was planning to produce confidential and attorney's eyes only designated documents pending entry of an agreed confidentiality order.[13]

Despite the fact that a year and half had passed without Plaintiff producing a single document, Plaintiff nonetheless requested and received an additional eight days of time to

---

[9] *1-800-Contacts, Inc. v. Lens.com*, civil action no. 2:07-cv-00591-CW-DN docket sheet (appended hereto as Exhibit B).
[10] Memorandum Opinion [Doc. 50], p. 16-17.
[11] Transcript of June 16th hearing [Doc. 88], p. 8, lines 16-25, p. 9, line 1.
[12] Transcript of June 16th hearing [Doc. 88], p. 8, lines 16-25, p. 9, line 1.
[13] Transcript of June 16th hearing [Doc. 88], p. 10, lines 22-25.

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

5

produce its initial disclosures and to produce documents responsive to Defendant's Request for Production. The parties entered into a protective order[14] and an accompanying agreed order that was entered for both to produce all responsive documents by June 25, 2010.[15] The protective order contains language that prevents all but litigation counsel, outside experts and certain related staff from viewing documents designated attorney's eyes only.[16]

At the June 16, 2010, scheduling conference, Judge Nuffer learned that the Plaintiff had failed to produce *any* documents as of June 16, 2010, despite the case having been on file since December 2008 and took action. Under sustained questioning from Judge Nuffer, counsel for Plaintiff represented that Plaintiff 1-800-Contacts would produce "all" its responsive documents by the June 25, 2010, deadline contained in the agreed court order of June 7th. "We are planning to get all the documents by June 25th."[17]

Based on this representation, Judge Nuffer concluded that June 25th "is a big day" and proceeded to announce deadlines for discovery cutoff, expert reports, dispositive motions, etc. that relied on Plaintiff's counsel's representations regarding its ability and willingness to produce documents for the first time in this case and in a complete and comprehensive way on June 25, 2010.[18]

Based on Plaintiff's counsel's representation that June 25th would be a "big day" with respect to comprehensive document production, Judge Nuffer ordered a fact discovery cutoff of January 28, 2010, that the parties exchange proposed deponents and proposed dates by July 23, 2010, and an August 13, 2010, deadline for amending pleadings and adding new parties.[19] These

---

[14] Stipulated protective order [Doc. 79].
[15] Order [Doc. 80].
[16] Stipulated protective order [Doc. 79], ¶ 5
[17] Transcript of June 16th hearing [Doc. 88], p. 11, lines 6-7.
[18] Transcript of June 16th hearing [Doc. 88], p. 19, lines 1-25.
[19] Transcript of June 16th hearing [Doc. 88], p. 20, lines 1-10, p. 23, lines 6-23.

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

6

deadlines and others set forth in the scheduling order were much shorter than those requested by Defendant, and as Plaintiff intended in representing a complete document production by June 25, 2010, were much more in line with the substantially shorter deadlines sought by Plaintiff's counsel who had argued repeatedly at the June 16th hearing that little time was needed for discovery in the case.

On June 25, 2010, Defendant produced nearly 100,000 pages of documents, including approximately 90,000 pages of emails.

Because the parties had served essentially the same sets of requests for production (with very similar wording) on the other,[20] Defendant expected a similar production from Plaintiff by June 25, 2010, but instead received a production that did not represent a good faith effort at being responsive and was in no way in line with what was represented to Judge Nuffer at the June 16th hearing:

Plaintiff's June 25th production was lacking in at least the following, glaring respects:

- Absolutely *no emails* of any kind were produced. No explanation has ever been provided for why Plaintiff failed to produce *any* emails whatsoever by the June 25th court ordered deadline, which counsel for Plaintiff claimed at the June 16th hearing would be a date for production of "all" responsive documents.

- Absolutely *no documents related to other trademark litigation* (approximately 20 have been filed) in which 1-800-Contacts has been a party were produced. Settlement agreements, declarations, affidavits, deposition transcripts, hearing transcripts, expert reports, dispositive motions and responses thereto, witness designations, Daubert

---

[20] *Compare* Plaintiff's request for production and interrogatories (appended hereto as Exhibits C and D) *with* Plaintiff's responses and answers to Defendant's request for production and interrogatories (appended hereto as Exhibits E and F).

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

7

motions, documents produced in prior litigation, trademark surveys carried out to determine customer confusion, etc. were all completely left out of the production that Plaintiff sent out on June 25th, notwithstanding Plaintiff's representations at the June 16th hearing. Many of these documents (e.g. expert reports, witness designations, deposition transcripts, etc.) are of the type that would not be filed in any court docket. Others might be filed under seal. Nonetheless, Plaintiff's response to Defendant's request for production did nothing more than invite Defendant to search PACER for the relevant documents.[21] No documents were produced. Though no objections were raised on or before June 25, 2010, concerning possible third party confidential information contained in such documents (thereby waiving such objections), Plaintiff's counsel has belatedly raised in recent communications with Defendant (nearly two months after timely objections were due) that purported third party confidential materials in such documents require withholding every single page of such documents. This objection has been waived, there is a strong protective order in place and, if necessary, such materials can be redacted.

- No documents related to *customer confusion or consumer reviews* were produced. In response to Plaintiff's request for production requesting same, Defendant expended considerable resources searching its databases and emails for any communications from customers that referred to 1-800-Contacts. Most of Defendant's over 90,000 pages of emails produced were from customers. When faced with the same request for production,[22] Plaintiff refused to search its own databases claiming that it would be unduly burdensome and then claimed conveniently (having, of course, failed to

---

[21] Request for production no. 39, 40, 52, 57 and 60 and response thereto (appended hereto as Exhibit E).
[22] Request for production nos. 17, 36, 37, 38, and 39 and response thereto (appended hereto as Exhibit E).

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

8

- search its own databases) that it was unaware of any such documents indicating confusion.

- *No documents related to prior challenges to Plaintiff's marks* were produced. Counsel for Plaintiff has advised that there has been at least one legal proceeding before the United States Patent and Trademark Office concerning the validity of 1-800-CONTACTS' mark and yet nothing has been produced.[23]

- *No documents explaining the reports prepared by third party vendors who monitor internet usage* on behalf of 1-800-CONTACTS have been produced. Plaintiff has provided the raw data from such vendors but documents such as correspondence with such vendors, explanations of such data and communications regarding such data and marketing materials explaining the third party vendor's service – which Plaintiff does not deny exist -- are completely missing.[24]

- *No trademark registration documents were produced.*[25]

- No documents related to the *generic nature of Plaintiff's mark* were produced or the claim made by Plaintiff that 1 800 contacts is *widely recognized by consumers* and often treated as *shorthand for internet contact lens retailers*.[26]

- No documents related to Plaintiff's *communications to and dealings with internet search providers (Bing, Yahoo and Google)* concerning Plaintiff's use or nonuse of competitor's trademarks, domain names and/or display URLs and reasonable variations thereof as keywords, Plaintiff's use or nonuse of negative keywords, Plaintiff's use or nonuse of broad match search algorithms, or Plaintiff's demand to

---

[23] Request for production no. 39, 40, 52, 57 and 60 and response thereto (appended hereto as Exhibit E).
[24] Request for production nos. 54 and 55 and responses thereto (appended hereto as Exhibit E).
[25] Request for production no. 62 and response thereto (appended hereto as Exhibit E).
[26] Request for production nos. 64, 65 & 68 (appended hereto as Exhibit E).

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions                           9

internet search providers to stop providing broad match search algorithms were produced.[27]

- No documents related to *consumer reaction to sponsored links in search engine advertising* have been produced.[28]

- No documents resulting from *Plaintiff's third party monitoring agencies' monitoring of Plaintiff's own internet activities* were produced even though Plaintiff acknowledges that such documents exist.[29]

- No documents related to *Plaintiff's data or document retention policies* were produced even though Plaintiff acknowledges that such documents exist.[30]

- No *correspondence between the parties* was produced even though Defendant produced such documents.[31]

Plaintiff also failed to respond, or gave intentionally deceptive responses, to several interrogatory answers:

- Interrogatories seeking disclosure of past use of competitors' trademarks as keywords were avoided by changing the verb tense to the present.[32]

- An interrogatory seeking information related to customers confusing 1-800-Contacts with one of its competitors was not answered with the claim that it was too burdensome to search 1-800-Contacts' records and that absent such search Plaintiff

---

[27] Request for production nos. 20, 21, 22, 23, 26, 61 and responses thereto (appended hereto as Exhibit E).
[28] Request for production nos. 11, 46 and responses thereto (appended hereto as Exhibit E).
[29] Request for production no. 66 and response thereto (appended hereto as Exhibit E).
[30] Request for production no. 32 and response thereto (appended hereto as Exhibit E).
[31] Request for production no. 51 and response thereto (appended hereto as Exhibit E).
[32] Interrogatory Nos. 4 & 5 and related answers (appended hereto as Exhibit F).

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

was unaware of any such instances of confusion.[33]  Defendant had already produced over 90,000 pages of documents responsive to exactly this request.

In house counsel David Zeidner verified the accuracy of these intentionally deceptive interrogatory answers.

Defendant has sent two lengthy communications detailing these glaring omissions in Plaintiff's discovery responses and answers.[34]

On or about August 3, 2010, during a week that Defendant's counsel had previously advised he would be on vacation, Plaintiff quietly mailed another two CD ROMs full of documents (bates numbered PL010454 – PL013909 and PL013910 – PL014880) containing four thousand (4000) pages of responsive and relevant documents that Plaintiff had intentionally failed to produce by June 25th.  For the first time, these CD ROMs contain emails (regarding communications with affiliates) and some documents that were produced in the Lens.com litigation.  The CD-ROMs came unaccompanied by a cover letter detailing what documents were being produced and what documents were still being withheld.  Plaintiff cannot explain why it produced four thousand pages of responsive, relevant documents over one month late and, worse, why, except for producing some emails, the other categories of documents and nonresponsive, misleading interrogatory answers remain.

Having violated the court ordered June 25th document production deadline, Plaintiff then proceeded to ignore Judge Nuffer's instructions to exchange proposed witnesses and deposition schedules by on or about July 23, 2010, and instead on July 16, 2010, unilaterally noticed its depositions[35] prior to the July 23rd deadline ordered by Judge Nuffer for the parties to exchange "proposed deponents and schedules."  Plaintiff's counsel's July 16th email further claimed in

---

[33] Interrogatory No. 13 and related answers (appended hereto as Exhibit F).
[34] July 15, 2010, email (appended hereto as Exhibit G); July 23, 2010, letter (appended hereto as Exhibit H);
[35] July 16, 2010, email (appended hereto Exhibit I).

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions    11
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

defiance of what Plaintiff had actually produced, and Judge Nuffer's comments and questions at the June 16th hearing, that Plaintiff had fully complied with its document production obligations. The depositions were noticed for August – a month acknowledged by Plaintiff's counsel Mark Miller as the busiest of the season for the industry – and seek the depositions of the individuals who serve as the chief executive officer (Eric Holbrook) and chief technology officer (Elio Sanchez).

At the same time, Plaintiff has steadfastly refused to present its own CEO (Mr. Coon) or the in house attorney who verified Plaintiff's interrogatory answers (David Zeidner) for depositions.[36]

Counsel had agreed to confer on July 30, 2010 (only 7 days after Judge Nuffer's ordered exchange of proposed deponents and dates), immediately prior to Defendant's departure for a one week vacation. During that planned phone call, Plaintiff's counsel was to provide a date certain by which time it would produce its documents and Defendant's counsel was to provide deposition dates. Instead, Plaintiff reneged on that understanding and filed a motion to compel claiming lack of cooperation and asked the court to set an emergency hearing during Defendant's counsel's vacation week – apparently without advising the court of Plaintiff's counsel's planned vacation beforehand.

Upon returning from vacation, Defendant's counsel sent a letter to Plaintiff offering multiple dates for Messrs. Holbrook's and Sanchez's depositions during the general time frame that Plaintiff had previously offered other deponents for questioning.[37] Plaintiff rejected the proffer, instead continues to insist on August deposition dates and continues to attempt to maneuver to make sure that all of Plaintiff's depositions are completed before Defendant can

---

[36] July 29, 1010, letter (appended hereto as Exhibit J).
[37] August 9, 2010, letter (appended hereto as Exhibit K).

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

12

take any depositions and long before Plaintiff has complied with its document production obligations.

## II.

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND COMPLETE INTERROGATORY ANSWERS

The parties entered into an agreed order setting a June 25, 2010, deadline for both parties to produce documents. Defendant has produced approximately 100,000 pages, a process that substantially consumed the time of Messrs. Holbrook and Sanchez over the course of three months. Plaintiff represented that it would make a complete production by June 25, 2010, at the June 16th hearing to obtain shorter deadlines in the case, then failed to make a good faith first production and has continued to resist complete production to this very date despite numerous efforts on Defendant's part to extend Plaintiff more time to comply.

Plaintiff has also misrepresented Defendant's lack of cooperation on written discovery in an attempt to take the court's attention away from its own discovery misconduct. Plaintiff claimed that Defendant has failed to supplement when in fact Plaintiff has requested no additional documents and served a second request for production on July 16, 2010, seeking to physically inspect Defendant's electronic records for which the response is not yet due.[38] Defendant has already advised that the answer to the interrogatory called into question by Plaintiff is accurate as it stands, in response to Plaintiff's follow up inquiries.

Accordingly, Defendant requests that the court enter an order compelling production of the aforementioned categories of documents and answers to the aforementioned interrogatories.

## III.

---

[38] Nonetheless, Defendant has already contacted Plaintiff's counsel to inquire about the parameters of the requested inspection.

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

13

### MOTION TO COMPEL DEPOSITIONS OF
### JONATHAN COON AND DAVID ZEIDNER

David Zeidner verified the factual accuracy of Plaintiff's interrogatory answers and supplemental interrogatory answers. Further, he is at least partially responsible for Plaintiff's document production and withholding of relevant documents and developing some of Plaintiff's internal policies regarding internet search advertising and intellectual property protection. Mr. Zeidner is not a litigator and under the terms of the agreed protective order entered in this case may not view Defendant's Attorney's Eyes Only designated documents. Plaintiff may not preclude Mr. Zeidner from being deposed simply because he has a law license.

Jonathan Coon serves as the CEO of the Plaintiff and is ultimately responsible for Plaintiff's policies and practices. Further, Mr. Coon has given one or more talks about Plaintiff's branding strategy and thus is specifically knowledgeable about facts relevant to this case. Plaintiff has steadfastly refused to present Mr. Coon for deposition.

Plaintiff's counsel has represented that he is available for depositions in early September and late September, as well as early to mid October. Defendant requests that these depositions be set for two weeks after Plaintiff has produced the documents sought in this motion.

### IV.

### RESPONSE TO MOTION TO COMPEL DEPOSITIONS

Judge Nuffer set forth an orderly sequence of events to take place in discovery – document production by both sides by June 25, 2010, exchange of proposed deponents and deposition schedules by July 23, 2010 (after review of documents produced) and then for the parties to confer.

Plaintiff chose to short circuit this process by unilaterally noticing depositions before July 23, 2010, even though Plaintiff has yet to make the full production ordered by June 25, 2010, and

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

14

promised to Judge Nuffer at the June 16th hearing. There is no point in exchanging "proposed" deponents and schedules by July 23rd if Judge Nuffer intended the parties to unilaterally notice depositions. Defendant complied with Judge Nuffer's orders by producing its documents by June 25, 2010, and sending a letter with its proposal for depositions by July 23, 2010. Plaintiff has acted in defiance of both orders.

Courts can obviously enter orders – notwithstanding Plaintiff's strange claims to the contrary -- that determine the sequence and timing of events, including discovery, that occur in a lawsuit. Indeed, Judge Nuffer has already done so. Based on the record, Plaintiff has clearly violated its representations to Judge Nuffer made at the June 16th hearing regarding document production, the terms of the agreed order requiring document production by June 25, 2010, and Judge Nuffer's instructions regarding the scheduling of depositions.

In light of the above, Defendant would ask that the court enter an order requiring Plaintiff first to produce the documents sought in this motion that were due nearly two months ago and that Plaintiff make Messrs. Zeidner and Coon available for depositions in the September/October time frame before being allowed to proceed with depositions.

Per Judge Nuffer's instructions, Defendant presented its proposed deposition schedule on July 23rd, sought to confer with Plaintiff and, when Plaintiff's counsel short circuited that effort by moving to compel instead, offered the individuals serving as its chief executive and technology officers for depositions in late September and mid October, respectively, the same time frames that Plaintiff offered its other witnesses for deposition. Plaintiff rejected that offer because it continues to seek to complete all of its depositions before it has produced the documents ordered to be produced on June 25, 2010, and before it has presented any of its witnesses for deposition. At the same time – ironically, Plaintiff has filed a lengthy

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

15

memorandum in connection with its motion to compel contending that parties that seek to influence the order of discovery must be sanctioned.

Plaintiff has already withdrawn its August 11th and 12th deposition notices via email but insists on proceeding with the hearing scheduled on August 19th.

## V.

## MOTION FOR SANCTIONS

Plaintiff entered into an agreed order – enforceable by contempt – to produce its documents by June 25, 2010, and represented to a federal judge in open court that it would produce "all" its documents by that date.

The production in fact lacked such basics as emails, documents from prior Plaintiff trademark litigation making the same allegations (expert reports, witness designations, witness affidavits/declarations, motions filed under seal, etc.) that would not be publicly accessible, documents concerning Plaintiff's own use of competitor's trademarks as keywords and many other categories of documents.

Plaintiff then produced approximately 4000 additional pages over a month later on or about August 3, 2010 (during the week of Defendant's counsel's vacation), including its first email document production, but even then lacking some of the most basic documents such as pleadings and discovery from other cases in which Plaintiff has made the same trademark infringement allegations that are not publicly accessible.

Plaintiff further has given misleading interrogatory answers – "cleverly" – changing verb tenses to imply that it has never purchased competitor's trademarks as keywords.

Finally, Plaintiff refuses to produce the individual (David Zeidner) who verified the factual accuracy of its interrogatory answers and oversaw its document production for deposition

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

16

or its own CEO Jonathan Coon (while demanding the deposition of the individuals serving as Defendant's chief executive officer and chief technology officer during August – which Plaintiff's counsel Mark Miller has acknowledged as the most seasonally busy month of the year).

## VI.

## CONCLUSION

Defendant requests that these motions be heard on an expedited basis on August 19, 2010, contemporaneously with Plaintiff's Motion to Compel Depositions. Defendant has already been prejudiced by having had to put forth its proposed deponent list by July 23, 2010, without the benefit of any emails from Plaintiff and now faces an August 13, 2010, new party and amended pleadings deadline.

Plaintiff has had many opportunities since March 2010 of this year when the Rule 26 was first held to produce documents and has failed to do so absent court intervention. Plaintiff requests that the attached proposed order be entered.[39]

Respectfully submitted,

/s/Anthony W. Hong
Anthony W. Hong
(Admitted *pro hac vice*)
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
Telephone: (713) 432-9992
Facsimile: (713) 432-9984

OF COUNSEL

D. Scott Crook (#7495)
Kathryn J. Steffey (#10245)
SMITH HARTVIGSEN, PLLC
215 South State Street, Suite 650
Salt Lake City, Utah 84111

---

[39] Exhibit L.

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions

17

Telephone:  (801) 413-1600
Facsimile:  (801) 413-1620

## CERTIFICATE OF SERVICE

    I hereby certify that on August 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of the filing to the NEF attorneys of record.

                      /s/Anthony W. Hong

Defendant Memorial Eye's Response to Plaintiff's Motion to Compel Depositions   18
Defendant Memorial Eye's Motion to Compel Depositions
Defendant Memorial Eye's Motion to Compel Production of Documents and for Sanctions