Anthony W. Hong
(Admitted *pro hac vice*)
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
Telephone: (713) 432-9992
Facsimile: (713) 432-9984
Email: awhong@lawgroupip.com

OF COUNSEL

D. Scott Crook (#7495)
Kathryn J. Steffey (#10245)
SMITH HARTVIGSEN, PLLC
215 South State Street, Suite 650
Salt Lake City, Utah 84111
Telephone: (801) 413-1600
Facsimile: (801) 413-1620
Email: scott.crook@smithlawonline.com
Email: ksteffey@smithlawonline.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| 1-800-CONTACTS, INC., | Case No.: 2:08-cv-983 |
|---|---|
| Plaintiff, | **EXPENDED CONSIDERATION REQUESTED** |
| v. | District Judge Ted Stewart |
| MEMORIAL EYE, P.A., d/b/a SHIPMYCONTACTS.COM, SHIP-MY-CONTACTS.COM, and IWANTCONTACTS.COM | Magistrate Judge Samuel Alba |
| | **DEFENDANT MEMORIAL EYE'S REPLY BRIEF IN SUPPORT OF ITS MOTIONS TO COMPEL** |

On August 14, 2010, Defendant filed its motions to compel depositions (of CEO and founder of

1-800-Contacts, Inc. Jonathan Coon and in house intellectual property attorney David Zeidner),

documents (which had not been produced in accordance with the previously court ordered deadline of June 25, 2010)[1] and interrogatory answers.

At an August 19, 2010, hearing, the court verbally ordered Plaintiff to produce everything sought by Defendant in its motion to compel with the exception of documents (including the deposition testimony of Plaintiff's witnesses) that Plaintiff had asserted had been designated as containing third party trade secrets.

Plaintiff raised no other objections to production of documents or answering the sought after interrogatories either at the August 19th hearing or in its response, which was filed afterward. Contrary to a misrepresentation in one of Plaintiff's footnotes,[2] Defendant *did* attach as exhibits Plaintiff's nonresponsive and evasive written discovery responses and explained why the sought after information was relevant and should be produced.[3] Plaintiff has never attempted to meet its burden of demonstrating why any of the sought after discovery is unduly burdensome. Relevance and undue burden were the objections raised and both were dealt with by Defendant's Motions to Compel; purported third party trade secrets were never raised as an objection in timely fashion to any written discovery served on Plaintiff.

The court assigned Plaintiff's counsel the responsibility of drafting a proposed order and Plaintiff's counsel arrived at a draft order that somehow denied production of the many categories of documents that Plaintiff has made no attempt to defend withholding.

---

[1] At the June 16, 2010, scheduling conference held before Judge Nuffer, Plaintiff represented that it would produce "all" documents by June 25, 2010 (a deadline also imposed by agreed order):
    THE COURT:    So have documents been produced by either side so far?
    MR. HONG:    By us, we produced close to 900 pages, but nothing from the plaintiff so far.
    THE COURT:    Is that right?
    MS. UTLEY:    Yes, but we are planning on getting all the documents by June 25th. [Doc. 88], at 11, lines 1-7.

[2] Plaintiff's Response to Defendant's Motions to Ccompel, p. 3, n.3.
[3] Exhibits E and F to Defendant's Motions to Compel [Doc. 94-5 and Doc. 94-6].

Defendant's Reply in Support of its Motions to Compel      2

Plaintiff's counsel also represented to Defendant's counsel that he would order a copy of the August 19th transcript but in fact utterly failed to do so in an apparent attempt to further delay production of documents that should have been produced by June 25th at the latest.

From an *August 20, 2010*, email (Exhibit A, emphasis added) from plaintiff's counsel Mark Miller:

> "What are you talking about here?  I asked my secretary **yesterday** to *order a transcript of the hearing*.  Please explain to me when I 'declined to order one? *The way you manufacture facts is astounding to me*, regardless of how minor they are.  I simply said I didn't think the Court wants us to wait for a transcript before getting a proposed order."

On September 8, 2010, Defendant's counsel checked with court reporter Ed Young and learned that Plaintiff's counsel did not in fact ever order a transcript of the August 19th hearing.  Plaintiff's counsel did order an audio CD, and after having first heard the tape, apparently decided that it was in his and his client's best interests not to order a transcript of the CD for the court's review.  After learning of Plaintiff's counsel's deception, Defendant's counsel placed an order for the transcript that – had Plaintiff's counsel not misrepresented his intentions – would already be available for the court's review.

## I.   DOCUMENTS AND INTERROGATORIES

On August 19, 2010, the court ordered Plaintiff to produce by August 30, 2010, everything sought by Defendant in its motion to compel except for documents actually containing third party trade secrets and designated as such by such third parties.

Plaintiff has not objected either verbally or in writing to any of the other document requests or interrogatories identified in Defendant's motion to compel.  Plaintiff has presented no evidence of any kind to suggest that any of the sought after production or interrogatory questions are unduly burdensome to answer.  Plaintiff has made no attempt to argue that the sought after production is immaterial to any issue in this case.

As to third party trade secrets and documents designated as such, Plaintiff has presented no evidence on the purported burden of redacting sought after documents that have been designated by third parties as containing purported trade secrets. There is no indication as to how many such documents exist or the number of pages that would require redaction.

Defendant notes that Plaintiff has already produced redacted documents in this case. Specifically, Plaintiff has already gone through the emails it has produced and redacted portions of some. Redacting and producing all deposition transcripts of 1-800-Contacts' employees and experts from the pending *Lens.com* litigation, all dispositive motions and Daubert motions and responses and replies thereto should not result in any great burden. There are very few. It is certainly less burdensome than what Plaintiff has already done in going through several thousand emails (all produced after the June 25, 2010, document production deadline) and redacting where necessary.

As of this date, well after the August 30th cutoff ordered by the court (which followed the June 25th deadline that Defendant ignored), Defendant continues to withhold at least the following additional documents.

*Documents concerning the videotape of 1-800-Contacts, Inc. CEO and founder Jonathan Coon admitting that Plaintiff's mark is generic* are still being withheld.

The videotape (bates numbered ME1970 in Defendant's June 25, 2010, production to Plaintiff) shows Jonathan Coon giving a talk with power point slides appearing in the background and has Mr. Coon stating in relevant part:

> "And we have a problem that I think is, you know, in some ways we're lucky to have which we call it sort of the Kleenex issue. When somebody asks for Kleenex, they don't say 'hey, do you have any facial tissue?' People don't say 'facial tissue,' they say Kleenex even if it's Puffs or some other brand of tissue. We have that same problem where no matter who does something in our industry, people don't remember our competitors' names so they say 1-800-Contacts did it."

Trademarks that are 'generic" are invalid and unenforceable.[4] Defendant asserted genericness as an affirmative defense, Lens.com asserted the defense in a pending lawsuit brought by 1-800-Contacts, Inc. against Lens.com in the District of Utah and on information and belief Lens.com also challenged the validity of Plaintiff's mark in a pending proceeding before the trademark office in Washington, D.C. Plaintiff did not produce Mr. Coon's videotaped presentation in any of these proceedings, the power point slide shown in the background of the videotape or any of the data and analyses that back up Mr. Coon's talk and power point slides.

Instead, Plaintiff affirmatively denied the videotape's existence. From Plaintiff's Responses and Objections to Defendant's First Request for Production (Exhibit E to Defendant's Motions to Compel [Doc. 94-5]):

*Request No. 64*: All documents that concern the issue of customers not recalling the names of other internet contact lens retailers and using 1-800 Contacts as a catchall phrase referring to internet contact lens retailers in general.

\* \* \*

*Answer to Request No. 64*: Plaintiff incorporates the above-stated General Objections. Subject to the foregoing objections, Plaintiff responds as follows: there are no such documents.

\* \* \*

*Request No. 65*: All documents that mention or refer to the Kleenex problem when referring to 1-800 Contacts.

*Answer to Request No. 65*: Plaintiff incorporates the above-stated General Objections. Plaintiff also objects on the ground that "Kleenex problem" is not defined sufficiently for Plaintiff to provide any meaningful response to this request.

\* \* \*

*Request No. 68*: All documents (including but not limited to audiotapes, transcripts, videotapes, etc.) of speeches or talks given by officers, directors and/or other representatives regarding Plaintiff's Marks or 1-800 Contacts' brand.

---

[4] "Underlying the genericness doctrine is the principle that some terms so directly signify the nature of the product that interests of competition demand that other producers be able to use them even if terms have or might become identified with a source and so acquire 'de facto' secondary meaning." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 304 (3d Cir. 1986). A generic mark receives no protection whatsoever. *A.J. Canfield*, 808 F.2d at 297.

*Answer to Request No. 68*: Plaintiff incorporates the above-stated General Objections. Plaintiff also objects on the ground that the request is overly broad, unduly burdensome and is irrelevant.

* * *

*Plaintiff refuses to answer interrogatories concerning its own past use of competitors marks (Exhibit F to motion to compel [doc. 94-6], Interrogatory Nos. 4 and 5), display URLs and/or domain names as keywords for internet search advertising, as well as use of broad matching algorithms and nonuse of negative keywords, and continues to refuse production of documents illustrating same.*

The issue is and remains ongoing in the *Lens.com* litigation (Exhibit B) as it is in this case and, indeed, a panel of the United States Court of Appeals for the Second Circuit once admonished Plaintiff for engaging in the very behavior that it claimed was trademark infringing.[5]

*Plaintiff has withheld documents from other lawsuits that are neither designated third party trade secreted nor are publicly accessible.*

In truth, a search on PACER shows that almost none of the pleadings in the *WhenU* litigation (PACER, 2nd Circuit, party name *WhenU*) are accessible on PACER even though few, if any, are filed under seal. Likewise, there is a pending challenge before the trademark office in Washington, D.C. against the validity of Plaintiff's mark. Those documents are not third party trade secreted nor are they accessible via PACER.

These are only a few examples of Plaintiff's egregious, and highly improper, document withholding and interrogatory avoiding strategy in this case, which continue unabated notwithstanding the court ordered June 25th and August 30th deadlines.

## II. DEPOSITION OF JONATHAN COON

Plaintiff attempts to shield its own CEO Jonathan Coon from testifying even as it attempted to force the individual who performs the CEO function for Memorial Eye – Eric Holbrook – to testify on dates indisputably inconvenient to him. Mr. Holbrook was identified as knowledgeable on a narrow range of issues (along with another individual) and yet Plaintiff intends to depose Mr.

---

[5] *1-800 Contacts, Inc. v. WhenU.com*, 414 F.3d 400, 409 n.12 (2d Cir. 2005).

Holbrook for the full seven hours permitted for depositions in this case and on an unlimited range of issues.

The Tenth Circuit in no way has adopted the two prong test for so-called Apex depositions that Plaintiff cites in its opposition.[6] Plaintiff's opposition cites only one case from the Tenth Circuit, *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995). Plaintiff then misrepresents – egregiously so – that the *Thomas* case requires "specific, unique knowledge" and that discovery by "less intrusive means" has been attempted. In fact, such language appears nowhere in *Thomas*.

*Thomas* permitted the CEO of IBM to avoid being deposed in a case alleging employment discrimination by IBM based on multiple factors – none of which are present in this case:

> First, [plaintiff] Thomas does not dispute that her notice to depose [IBM CEO] Akers in Oklahoma City on December 7th violated the court's Local Rule 15(a), which requires opposing counsel to give five-days' notice to deponents who are outside the jurisdiction. Additionally, Thomas' notice to conduct the deposition in Oklahoma City clashes with the normal procedure that the 'deposition of a corporation by its agents and officers should ordinarily be taken at its principal of business.'
> * * *
> Indeed, the district court noted that Thomas not only waited until after the expiration of the original discovery deadline to give notice of Akers' deposition, but also had not taken the deposition of any other IBM personnel.
> * * *
> Furthermore, IBM submitted an affidavit from [IBM CEO] Akers in which he testified that he lacked personal knowledge of Thomas and was unaware of her age, her performance ranking, any work evaluations that she might have received or that she even worked for IBM.
> * * *
> Also, [IBM CEO] Akers explained that the deposition would have imposed 'severe hardship' because he was required to attend previously scheduled meetings with IBM senior management in New York from December 3, 1992, to December 14th.
> * * *
> Although it is conceivable that [IBM CEO] Akers' testimony about the genesis of the ITO program could be relevant to a *disparate impact claim* against IBM, the district court concluded that Thomas *did not allege disparate impact* in her complaint, in the parties' Joint Status Report, or in her Final Contentions * * *

*Thomas*, 48 F.3d at 483 (emphasis added).

---

[6] [Doc 97], at 4-5.

> When we add to these factors Thomas' failure to give Akers adequate notice, the burden that a hurried deposition would have imposed on Akers, the fact that Thomas waited until the eleventh hour to request the deposition, and her failure to depose any other IBM personnel, including her own direct supervisors, it was clear beyond peradventure that the district court did not abuse its discretion in issuing the protective order.

Thomas, 48 F.3d at 484.

Plaintiff makes no attempt to show that any of the above factors are present in this case. Even if the standard manufactured by Plaintiff's counsel were the law of the Tenth Circuit (an inference that *Thomas*' actual language refutes), Mr. Coon should be required to testify.

No one but Mr. Coon has been identified as a person knowledgeable of the videotape (whose very existence Plaintiff denied in written discovery responses until Defendant discovered the existence of the tape on youtube.com), the power point presentation displayed in the video, the data underlying the presentation or the names of the individuals responsible for producing the presentation. Indeed, Plaintiff has stonewalled discovery requests for these documents even to the point of refusing to comply with the court's granting of an order to compel production of them at the August 19th hearing.

Plaintiff's current position is as follows: (a) noncompliance with the court's August 19th order to compel production of the video, the power point presentation and any documents disclosing the data supporting the presentation, (b) nondisclosure of the names of individuals who produced the video, prepared the power point presentation and/or compiled, stored and/or analyzed the data/facts underlying the power point presentation, (c) inability to produce any declaration by Mr. Coon detailing the issues of which he claims no personal knowledge, and (d) refusal to permit deposition of Mr. Coon even though he is the only person identified so far who has knowledge of the presentation, the power point slideshow, the data and other individuals with knowledge of the same.

Nothing in any of the cases cited by Plaintiff – all but *Thomas* decided outside the Tenth Circuit -- permit Plaintiff to refuse a deposition of its CEO given the above circumstances.[7]  Indeed, the court should compel Mr. Coon's deposition as to all topics as Plaintiff has failed even to attempt a showing that Mr. Coon lacks personal knowledge of any issue in this case.  Likewise, Plaintiff seeks to depose Mr. Holbrook – the chief executive of Defendant as to all topics.  The same discovery rules should apply equally to both parties.

Indeed, Plaintiff fails to advise the court of language quoted from a federal court of appeals opinion that can be found in a case that Plaintiff relies on heavily -- *Baine and Stephens v. General Motors Corporation*, 141 F.R.D. 332 (M.D. Ala. 1991): "'absent extraordinary circumstances,' an outright prohibition of the [Apex] deposition 'would likely be in error.'"[8]

### III.  DEPOSITION OF DAVID ZEIDNER

David Zeidner is Plaintiff's chief trademark transactional attorney.  Plaintiff admitted in an earlier filing that Mr. Zeidner "helps ensure compliance with other's IP rights."[9]  Mr. Zeidner has been responsible for coordinating document production by the Plaintiff and, according to Plaintiff's earlier filing, has been involved with prior internet related trademark litigation by Plaintiff.[10]

Mr. Zeidner has personal knowledge of at least four categories of information crucial to this case:  (1) documents from prior internet related trademark litigation that are remain in Plaintiff's possession, custody or control, (2) Plaintiff's policies concerning the IP rights of others and

---

[7] See, e.g., *Evans v. Allstate Insurance Company*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) ("In this case, the employees in question have filed affidavits stating that they have no personal knowledge of the facts of this case."); *Baine and Stephens v. General Motors Corporation*, 141 F.R.D. 332, 333, 335 (M.D. Ala. 1991)  ("As alternatives to this deposition, defendant has offered that the plaintiffs depose instead Mr. Robert Sinke, who was a distributee of that memorandum and then decide whether deposing Mr. Hertz is still necessary"; court did not quash deposition of corporate executive with prejudice but left open possibility of deposing executive later noting that 'absent extraordinary circumstances,' an outright prohibition of the deposition 'would likely be in error.'") (citation omitted); *AMR Corporation vs. Hon. Paul Enlow*, 926 S.W.2d 640, 643 (Tex. App.-Ft. Worth, 1996) (CEO of American Airlines submitted detailed affidavit specifically enumerating all the different relevant topics of which he had no personal knowledge).

[8] *Baine and Stephens v. General Motors Corporation*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (quoting Salter v. Upjohn, 593 F.2d 649, 651 (5th Cir. 1979)).

[9] Memorandum in Support of Plaintiff's Motion for Protective Order [Doc. 60], at 2.

[10] Memorandum in Support of Plaintiff's Motion for Protective Order [Doc. 60], at 2.

Defendant's Reply in Support of its Motions to Compel                                                                   9

documents pertaining thereto, (3) related to (2), whether Plaintiff has ever used its competitors' domain names, display URLs or trademarks as keywords for internet engines, (4) any and all efforts made to date to search for the whereabouts of responsive documents that have yet to be produced including but not limited to the Jonathan Coon video, the power point presentation contained therein and any supporting data, documents from other trademark lawsuits involving Plaintiff, and documents concerning whether Plaintiff has ever used its competitors' domain names, display URLs or trademarks as keywords.

No one but Mr. Zeidner has been identified as an individual who (a) was personally involved in prior trademark litigation involving the Plaintiff, (b) prepares and enforces Plaintiff's policies concerning the IP rights of others, and (c) was personally involved in Plaintiff's document production efforts in this case.  This is not a case like *Thiessen v. General Electric Capital Corporation*, 267 F.3d 1095 (10th Cir. 2001) in which the district court found that the information sought from opposing counsel was available elsewhere.[11]  Plaintiff has affirmed Mr. Zeidner's substantial personal knowledge by having him verify Plaintiff's initial and supplemental interrogatory answers – surreptitiously withdrawing his verification only when Defendant sought Mr. Zeidner's deposition.

Nor does questioning into any of the four above-referenced topics infringe the attorney client privilege.  Deposing on the issues of the existence and location of documents, policies and actions of which Mr. Zeidner has personal knowledge (e.g. concerning prior trademark litigations, Plaintiff's policies concerning the IP rights of others, Plaintiff's efforts to comply with this court's document production deadlines) do not violate any privilege.

The third element of the test articulated in *Thiessen* – that the information is needed to prepare Defendant's case is easily met.  Plaintiff has now ignored two document production

---

[11] *Thiessen*, 267 F.3d at 1112.

Defendant's Reply in Support of its Motions to Compel                                                                                              10

deadlines and the documents and information sought therein are needed to prepare and/or respond to dispositive motions and/or for trial, to retain experts and to rebut Plaintiff's experts (witness statements/pleadings/discovery from prior internet related trademark litigation involving Plaintiff, Plaintiff's use of competitor's domain names, display URLs and/or trademarks as search keywords, and of Plaintiff's continued noncompliance with its discovery obligations regarding same).

## IV.    CONCLUSION

Plaintiff has now violated two court ordered deadlines for production of written discovery. Defendant respectfully requests that the court take all necessary measures to address Plaintiff's continued and longstanding noncompliance with court ordered discovery deadlines.

Respectfully submitted,

/s/Anthony W. Hong
Anthony W. Hong
(Admitted *pro hac vice*)
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
Telephone:  (713) 432-9992
Facsimile:  (713) 432-9984

OF COUNSEL

D. Scott Crook (#7495)
Kathryn J. Steffey (#10245)
SMITH HARTVIGSEN, PLLC
215 South State Street, Suite 650
Salt Lake City, Utah 84111
Telephone:  (801) 413-1600
Facsimile:  (801) 413-1620

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of the filing to the NEF attorneys of record.

/s/Anthony W. Hong